Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 0456 | **DATE** | 7/17/2002 |
| **CASE TITLE** | HAWKINS vs. FIRST UNION CORP. LONG-TERM DISABILITY PLAN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment [9-1] is granted. Plaintiff's cross-motion for summary judgment [12-2] is denied. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 19 2002 date docketed | 16 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 7/17/2002 date mailed notice | |
| | CB courtroom deputy's initials | 02 JUL 18 AM 11:09 | PW mailing deputy initials | |
| | | 01 03 Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK C. HAWKINS, )
)
Plaintiff, ) No. 02 C 0456
)
v. ) Suzanne B. Conlon, Judge
)
FIRST UNION CORPORATION LONG-TERM )
DISABILITY PLAN (Welfare Plan #502) )
)
Defendant. )

DOCKETED
JUL 1 9 2002

## MEMORANDUM OPINION AND ORDER

Mark C. Hawkins ("Hawkins") sues First Union Corporation Long-Term Disability Plan ("the plan") to overturn the denial of his claim for long-term disability benefits pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Both parties move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

### I. Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. Local Rule 56.1 requires both the moving and non-moving parties to submit statements of material facts, including, "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(a)(3); Local Rule 56.1(b)(3)(B). Evidence submitted at the summary judgment stage must be admissible at trial. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000).



Both parties agree the plan administrator's decision to deny benefits must be reviewed under the arbitrary and capricious standard. Motion at 5; Response at 5-6. Under this standard, the court may consider only evidence that was before the administrator when the decision was made. *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 462 (7th Cir. 2001). Nevertheless, Hawkins offers his affidavit dated June 21, 2002 as evidentiary support for several paragraphs of his statement of additional material facts, including paragraphs 2-3, 12-13, 16-19, 23-24, 26-27, 30-31 and 39-41. As the plan points out, many of the facts included in Hawkins' affidavit are not contained in the administrative record. Consequently, any facts included in Hawkins' statement of additional facts that are not found in the administrative record will be disregarded.

## II. Facts

The following facts are undisputed. In 1991, First Union Corporation ("First Union") hired Hawkins as Director of Fleet Management. According to the job description, Hawkins' duties required him to spend 100% of his time sitting with 50% of that time spent typing. Def. Facts, Ex. A-9 (D0159).

In 1993, Hawkins was diagnosed with fibromyalgia. Dr. Robert S. Katz, a rheumatologist, has treated Hawkins for his condition since 1996. In 1997, Hawkins began seeing clinical psychologist, Peter Coe, Ph.D., for pain management. On February 22, 2000, Hawkins sought and was granted short-term disability benefits through First Union based on his condition. On May 12, 2000, Liberty Mutual was informed that Hawkins did not plan to return to work. Thereafter, Hawkins sought long-term disability benefits under the plan.

The plan is a self-funded employee welfare benefit plan as defined in ERISA. During his employment, Hawkins was a participant in the plan. The plan is administered by the First Union

2

Benefits Committee ("the committee") and Liberty Life Assurance Company of Boston ("Liberty Mutual"), a third-party claims administrator. According to the plan, "disability" is defined as:

(a) during the Elimination Period and the next 24 months, the Participant's inability to perform all of the material and substantial duties of his or her own occupation on an Active Employment basis because of an Injury or Sickness; and

(b) after the period described in paragraph (a) above, the Participant's inability to perform all of the material and substantial duties of his or her own or any other occupation for which he or she is or becomes reasonably fitted by training, education, and experience because of an Injury or Sickness.

Def. Facts, Ex. A-1 (D 0007).

On August 29, 2000, Liberty Mutual faxed Dr. Katz a letter, requesting updated medical information for Hawkins. On September 8 and September 11, 2000, Liberty Mutual sent letters to Hawkins, requesting additional information, including responses to a personal activities questionnaire. In the September 11, 2000 letter, Liberty Mutual informed Hawkins that his claim for long-term disability benefits would be denied if he failed to submit the requested information by September 22, 2000. Hawkins submitted the requested information, including the following responses to the personal activities questionnaire:

(Q) Describe a typical day from the time you awake to the time you go to sleep since you have been on [short-term disability] leave.

(A) Either head to class or therapy pool or both. Often try to rest an hour or so in between or after. Home from school, will normally rest or nap up to an hour. Then on to reading assignments/homework. Supper, cleaning up, reading or resting. Usually TV from 8 p.m. to 10 p.m.

* * *

(Q) Please indicate what housework . . . you currently do and how often you are able to do it.

3

(A) Do most laundry. Same floor machines, an occasional load or two on a good evening if not, partner does it. Do cooking 3 or 4 nights, & dishes in dishwasher. Vacuum every week or two, & only dust on rare occasions. Floors mopped every few months.

\* \* \*

(Q) Do you obtain your own groceries?

(A) Yes, online.

\* \* \*

(Q) Please indicate your current hobbies.

(A) Occasionally x-stitch, a lot of reading. Usually on-line [with] emails & internet news for an hour. Crossword puzzles. Swimming - I have continued with the warm water pool since I finished their rehab/[physical therapy] program in early 1998.

\* \* \*

(Q) In what types of social or community activities . . . do you participate?

(A) Do volunteer interpreting for deaf for 1 hour once a week when able.

\* \* \*

(Q) When do you expect to return to work? What type of work activity do you feel you are capable of resuming?

(A) When they find effective treatment/cure. Currently taking classes towards E-Commerce, Web Design & Graphic Arts.

Dr. Katz did not provide Hawkins' updated medical information by the deadline. On September 25, 2000, Liberty Mutual denied Hawkins' claim.

Thereafter, Liberty Mutual received the requested information from Dr. Katz. According to Dr. Katz, Hawkins continued to suffer from various maladies, including fibromyalgia. Dr. Katz reported that Hawkins' condition limited his ability to perform certain tasks. For example, Hawkins was only able to sit for four to five minutes at a time with an intermittent 10 to 15 minute break. Def's Facts, Ex. A-9 (D 0092-93). Dr. Katz also reported that Hawkins "can't turn pages very well." *Id.* Dr. Katz concluded that Hawkins was still unable to work a full day due to pain, fatigue and headaches that required frequent rest periods each hour. *Id.* After reviewing the information submitted by Hawkins, Liberty Mutual once again denied Hawkins' claim, finding that his job duties

4

as Director of Fleet Management were no more physically or mentally demanding than the activities described by Hawkins in his personal activities questionnaire.

On January 16, 2001, Hawkins appealed Liberty Mutual's decision to the committee. In his letter, Hawkins informed the committee:

> I am exploring options that may help me develop marketable skills in the event I am not able to return to the rail industry. The classes are prerequisites for many certificates or Associate Degrees such as Web-Page Design, E-Commerce or Graphic Design . . . I recently completing [sic] my first semester of two beginning level classes which met for 2 ½ hours on Monday through Thursday. Although I did pass the classes, I have found the class load was too much. I missed numerous classes due to migraines, and there were days when I had to leave early because I was unable to sit or use the computer for the full class period . . . I am considering enrolling next term for two classes which only meet 3 days a week. I want to try and continue taking 2 classes.

Def. Facts, Ex. B-1 (D 0210). The committee retained a rheumatologist, Dr. Chih-Hao Chou, to conduct an independent medical review of Hawkins' file. As part of his review, Dr. Chou conducted a telephone conference with Dr. Katz. After his review, Dr. Chou concluded that Hawkins' medical condition did not prevent him from performing his job. The committee affirmed the decision denying Hawkins' claim for long-term disability benefits.

## DISCUSSION

### I. Standard of Review

On cross-motions for summary judgment, each movant must individually satisfy the requirements of Rule 56. *EEOC v. Admiral Maintenance Service, L.P.*, No. 97 C 2034, 1998 WL 102748, at * 6 (N.D. Ill. Feb. 26, 1998). Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once

a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under the arbitrary and capricious standard, "[i]f the administrator makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, then the administrator's decision is final." *Cvelbar v. CBI Illinois Inc.*, 106 F.3d 1368, 1379 (7th Cir. 1997). The court will reverse the administrator's decision only if it was "downright unreasonable." *Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 660 (7th Cir. 1997).

## II. Denial of Hawkins' Claim for Long-Term Disability Benefits

The committee determined that Hawkins was not disabled as defined by the plan. In making the determination, the committee credited Dr. Chou's opinion over Dr. Katz's because: (1) there was no evidence of any change in Hawkins' medical condition in February 2000 that prevented him from working; and (2) Hawkins' activities questionnaire revealed inconsistencies with the limitations noted by Dr. Katz without conducting any objective clinical assessment. Hawkins claims the committee's reasons for denying his benefits are unfounded.

Hawkins argues the plan unreasonably credited Dr. Chou's opinion over that of Dr. Katz. However, the committee was entitled to rely exclusively on Dr. Chou's opinion provided that: (1) Dr. Chou was qualified to review Hawkins' condition; (2) the committee provided Dr. Chou with

complete and accurate information; and (3) Dr. Chou's conclusion was supported by the record. *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998). *See also Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir. 1994)(decision not arbitrary and capricious where decision comes down to permissible choice between treating physicians and independent medical consultants). Hawkins challenges the bases for Dr. Chou's conclusion that mirror the reasons offered by the plan for the denial.[1]

Hawkins first argues that the plan unreasonably considered his condition in February 2000 in denying his August 2000 claim for long-term disability benefits. Response at 8-9. As the plan points out, Hawkins' successful performance of his position from 1993 until February 2000 demonstrates his condition did not prevent him from doing his job. Hawkins did not present any evidence his condition deteriorated or he was otherwise less able to perform his job duties in February 2000 than in the seven year period prior to his claim. To the contrary, Dr. Katz confirmed that Hawkins' complaints have been consistent throughout the years. It was not unreasonable for the plan to consider this information in determining that Hawkins is not disabled. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982-83 (7th Cir. 1999)(administrator's denial of benefits not arbitrary or capricious where claimant failed to show a deterioration in her condition or she was otherwise less able to perform her job duties after successfully holding position for two years prior to claim).

Hawkins next argues the plan unreasonably determined that Hawkins' description of his activities was inconsistent with Dr. Katz's prescribed limitations. According to Dr. Katz, Hawkins

---

[1] Although Hawkins argues Dr. Chou did not consider Dr. Coe's opinion letter, he fails to indicate how Dr. Coe's opinion letter impacts Dr. Chou's analysis, especially when Dr. Chou independently reviewed the medical records documenting Dr. Coe's treatment of Hawkins.

could sit for four to five minutes at a time with a break of ten to fifteen minutes. Dr. Katz had not performed any functional capacity evaluation or other standardized clinical assessment in reaching this conclusion. In contrast, Hawkins informed the plan he was taking two college classes that met four times a week for two and one half hours each day. Although Hawkins claimed this schedule was ultimately too difficult for him, he planned to take two college classes, which met three times a week. Hawkins also described other sedentary activities, including watching television for two hours per day, computer-related activity for one hour per day, "a lot of reading," occasional cross-stitch and crossword puzzles. Based on this record, the plan was justified in taking Hawkins' word as to his ability to sit for longer than four to five minutes at a time over Dr. Katz's unsubstantiated opinion as to Hawkins' limitations.

Finally, Hawkins argues that three other considerations support a finding the plan's denial of his long-term disability benefits was arbitrary and capricious. First, Hawkins' claims denial of his long-term disability benefits is incompatible with favorable short-term and supplemental disability benefits decisions. Hawkins has not provided any evidence that the plan administrators considered the same information. *See Donato*, 19 F.3d at 380 (plan administrator is bound only to consider evidence before it). Indeed, Hawkins' claim for short-term disability benefits was approved nearly seven months *before* he submitted the personal activities questionnaire relied upon by the committee in denying his long-term disability benefits. Second, Hawkins' claims denial of his long-term disability benefits is incompatible with the plan's payment of benefits from August 22 through October 31, 2000. However, Hawkins' receipt of benefits after his claim was denied on September 25, 2000 establishes the benefits were paid in error rather than any approval of his claim. Third, Hawkins claims the plan's initial denial based on his failure to timely submit information was

8

arbitrary and capricious. Even if Hawkins' assertion were true, the plan rectified the situation by deciding Hawkins' benefits claim on the merits.

## CONCLUSION

The plan's decision to deny Hawkins' claim for long-term disability benefits was not arbitrary and capricious. Therefore, the plan is entitled to judgment as a matter of law on Hawkins' ERISA claim.

ENTER:

Suzanne B. Conlon
United States District Judge

July 17, 2002